[No. 29266.   Department One.   June 2, 1944.]

THE STATE OF WASHINGTON, *Respondent*, v.
GEORGE CHEMERES, *Appellant*.[1]

[1]Reported in 147 P. (2d) 815.

*Henry Clay Agnew,* for appellant.

*Lloyd Shorett* and *Wm. R. Bell,* for respondent.

GRADY, J.—The appellant, George Chemeres, was tried before a jury and found guilty of the offense of living with a common prostitute in violation of Rem. Rev. Stat., § 2440 [P. C. § 9112] (5), and, from the judgment entered on the verdict, he has taken this appeal.

The appellant contends that the evidence was not sufficient to establish the fact that he had lived with one Lydia Meiers on or about the second day of November, 1942, and that no competent evidence was introduced by the state that she was then a common prostitute.

There is evidence in the record from which the jury, by its verdict, must have concluded that the appellant and Lydia Meiers occupied a room, or apartment, in a certain hotel in the city of Seattle from November 2, 1942, until about June 30, 1943, and went by the name of, and were known to the management and employees of the hotel as, Mr. and Mrs. J. Duncan. The evidence upon which these ultimate facts are based is that the records kept by the hotel in the ordinary course of its business show that a room was assigned to them and that they both occupied it. Each of them made payments from time to time of the rental charge, for which receipts were issued and delivered. Upon leaving the hotel, one or the other would leave the key to the room at the hotel desk, and, as he or she returned, would call for it there. Telephone calls came in for the room number, and at times the one calling would ask for Mrs. Duncan. Some of the evidence was direct and some circumstantial, but, taken together, it made a question for the jury as to whether they had lived together as charged in the information.

In order to prove that Lydia Meiers was a common prostitute at the time it is alleged the appellant lived with her, the state called two witnesses, one a police officer and the

other an investigator for the office of the prosecuting attorney. The officer and the investigator, over timely and proper objections, testified as follows:

The police officer: "Q. Are you acquainted with a Lydia Meier[s]; do you know who she is? A. I do. Q. Do you know whether or not she is a common prostitute? . . . A. She is a common prostitute."

The investigator: "Q. Mr. Hughes, do you know who Lydia Meier[s] is? A. Yes, sir. Q. Have you ever talked to her? A. Yes, sir. Q. Do you know what her occupation is? A. What she told me. Q. What did she tell you? . . . A. She told me she was a common prostitute."

In each case a motion was made to strike the testimony, which was denied.

The police officer was not interrogated as to the source of his knowledge, nor did he relate any facts upon which he based his opinion or conclusion. The contention of the appellant is that the testimony of the witness was objectionable from a two-fold standpoint: (a) That it was merely his opinion or conclusion, and (b) it no more than established the fact that the person referred to was *then* a common prostitute, which was on October 25, 1943, while the time charged in the information was on or about November 2, 1942.

■ (a) The general rule for which citation of authority is not necessary is that, when testifying as to something that does not involve special knowledge or skill, a witness must state facts, and not his opinion or conclusion. To this rule there are exceptions permitting a nonexpert witness to give to the jury his opinion or conclusion. A very clear statement is found in 3 Jones Commentaries on Evidence (2d ed.), p. 2298, § 1248, as follows:

"As shown in the sections next preceding, the rule excluding testimony of nonexpert witnesses to their conclusions or opinions regarding the facts in issue is broad and of general application. Such rule, however, yields to necessity where its application would wholly prevent or seriously impair the ascertainment of truth.

"It often happens that it is practically impossible for a witness to detail all the pertinent facts of an occurrence in

issue in such manner as to enable the jury to form a conclusion without the opinion of the witness. Indeed, the witness may not be able to separate the facts and indications from which he has formed a conclusion from the conclusion itself. In many of the illustrations hereinafter set forth it is plain that, from the necessity of the case, the opinions of ordinary witnesses must be received. The ground upon which opinions are admitted in such cases is that, from the very nature of the subject in issue, it cannot be stated or described in such language as to enable persons not eye-witnesses to form an accurate judgment in regard to it. Of course, in all such cases, if the witness is unable to give any satisfactory basis or reasons for his opinion, the value of his testimony is impaired. Furthermore, it is to be observed that the matters as to which ordinary witnesses are allowed to give their opinions are only those of such character that they may be understood without special skill or training."

Many cases are cited in support of the text, including *Sears v. Seattle Consolidated Street R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081. In 20 Am. Jur. 640, § 769, appears the following:

"Formulated rules governing the admission and competency of evidence should usually be followed; but when a rigid adherence to them would be subversive of the ends for which they were adopted, they should no longer be rigidly adhered to. Accordingly, while opinion evidence is, as a general rule, inadmissible, the testimony of a witness is not to be always excluded merely because it is a statement of such opinion or conclusion. From very necessity testimony must occasionally be compounded of fact and opinion, so that exceptions and limitations upon the general rule that witnesses must testify to facts, and not opinions, have been found to be necessary to the due administration of justice; for example, expert witnesses who have skill, learning, or experience in a particular science, art, or trade may give an opinion in a proper case upon a given state of facts relating thereto. Exceptions to the rule that witnesses cannot give opinions are not confined to the evidence of experts testifying upon subjects requiring special knowledge, skill, or learning. It has also been found necessary to admit a class of evidence from nonexpert witnesses, which is usually spoken of as 'opinion evidence,' where the facts as they appeared to the witness cannot clearly and adequately be reproduced, described, and detailed to the jury.

"It is well established that in relation to matters relevant to the issues of a case, when it is not possible or practicable to place before the jury all of the primary facts and circumstances in such way as to enable the jury to form an intelligent conclusion from them, witnesses who have had means of personal observation may state their opinions, conclusions, and impressions formed from such facts and circumstances as come under their observation. The ground upon which such opinions are held to be admissible is that of impossibility or difficulty in reproducing the data observed by the witnesses."

■ We think it is quite apparent that the general rule applies here rather than the exceptions, and that it was error to permit the police officer to give as his opinion that the person referred to was a common prostitute, because it does not appear that it was not possible or practicable for the state, by the witness or others, to place before the jury the primary facts and circumstances in such a way as would have enabled the jury to conclude that the woman was at the time charged a common prostitute. The law gives to a woman who carries on indiscriminate illicit sexual relations with men the designation of a common prostitute, and whether she is such at any given time depends upon her course of conduct.

■ It is proof of the course of conduct that establishes her status as a common prostitute, and what the opinion of a witness may be or what conclusion he may draw does not prove such a status. An opinion based upon, or a conclusion drawn from, the conduct of another was not permitted in *Adams v. Georgia R. & Electric Co.*, 142 Ga. 497, 83 S. E. 131 (a very careful fellow); *Lang v. Lang*, 157 Iowa 300, 135 N. W. 604 (good boys); *Davidson v. Ryle*, 103 Tex. 209, 124 S. W. 616, 125 S. W. 881 (an honest man); *Jackson v. Folsom*, 187 Ind. 257, 118 N. E. 955 (a kind man); *McCubbins v. McCubbins*, 232 Ky. 698, 24 S. W. (2d) 573 (. . . a woman of bad character; . . . leading an immoral life).

In all the cases involving the offense charged against the appellant that have come before this court, it seems that the females concerned were either admittedly common prosti-

tutes or proved to be such, and the question now before us was not raised in any of them. The correct principles of the law of evidence applicable to this case are set forth and discussed in *State v. Trombley,* 132 Wash. 514, 232 Pac. 326.

In that case, p. 515, the only proof of breaking and entering a building was: "Q. Was your place burglarized? Ans. Yes." The word "burglarized" was used as indicative of some of the acts necessary to constitute burglary, and it was held that the witness gave only his opinion or conclusion, and that this was not proper. Such is the situation before us.

■ If competent proof of the status of Lydia Meiers as a common prostitute had been furnished, it should have been with reference to the time charged in the information. The crime charged is made up of two essential elements: (1) living with a woman on or about the time charged; and (2) that she was then a common prostitute. *State v. McGinty,* 14 Wn. (2d) 71, 126 P. (2d) 1086. The testimony of the police officer is capable of the interpretation that it related to the time he was testifying rather than as of the time referred to in the information. A woman might be a common prostitute at one time and not at another; and, in a case of this kind, the proof must be reasonably specific with reference to the period of time which forms a part of the basis of the crime charged.

■ (b) The testimony of the investigator was hearsay as to the appellant, and should not have been received. It does not appear that the appellant was present when the admission was made. The admission was with reference to one of the essential elements of the crime charged and was made by one whose statements would not be any proof of the facts they disclosed in so far as the appellant might be affected. The time element herein referred to also exists with reference to the testimony of this witness.

The judgment is reversed, with instructions to dismiss the action.

SIMPSON, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.